UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| EDWIN HERNANDEZ, ) | |
| ARLES GRANADOS LAZO, ) | |
| JOSE ORTEZ, YERLIN ORTEZ, ) | |
| MARTIR SOTO, AND ) | |
| SANTOS VELASQUEZ, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| GOLDEN APPLE, INC., POMODORO ) | |
| NORTH END, INC., MATT MURPHY'S ) | |
| PUB, INC., SIOBHAN CAREW, ) | |
| AND JONATHAN PELL, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## COMPLAINT

### Introduction

1. The Plaintiffs, Edwin Hernandez, Arles Granados Lazo, Jose Ortez, Yerlin Ortez, Martir
   Soto and Santos Velasquez (collectively "Plaintiffs") bring this action to recover for work
   that they performed for Golden Apple Inc., North End Pomodoro, Inc., Matt Murphy's
   Pub, Inc., Siobhan Carew and Jonathan Pell (collectively "Defendants") from as early as
   the 1990s until 2012. During this time period, Defendants regularly and deliberately
   failed to pay the Plaintiffs overtime compensation in violation of federal law.

### Jurisdiction and Venue

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 29 U.S.C. §§
   207 and 216(b).

3.  Defendants have their principal place of business in this district and are therefore subject to personal jurisdiction here.

4.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because the Defendants reside in this district and are subject to personal jurisdiction in this district.

## Parties

5.  Plaintiff Edwin Hernandez (hereinafter "Hernandez") is a resident of Chelsea, Massachusetts and a former employee of Defendants.

6.  Plaintiff Arles Granados Lazo ("Lazo") is a resident of Everett, Massachusetts and a former employee of Defendants.

7.  Plaintiff Jose Ortez ("J. Ortez") is a resident of Boston, Massachusetts and a former employee of Defendants.

8.  Plaintiff Yerlin Ortez ("Y. Ortez") is a resident of Boston, Massachusetts and a former employee of Defendants.

9.  Plaintiff Martir Soto ("Soto") is a resident of Boston, Massachusetts and a former employee of Defendants.

10. Plaintiff Santos Velasquez ("Velasquez") is a resident of Chelsea, Massachusetts and a former employee of Defendants.

11. Plaintiffs' written consent to participate in this action is attached hereto as Exhibit "A."

12. Defendant Golden Apple, Inc. ("Golden Apple") is a corporation duly organized under Massachusetts law with a principal place of business located at 24 Harvard Street, Brookline, Massachusetts. On information and belief, Golden Apple operates under the name "Pomodoro" ("Brookline Pomodoro").

13. Defendant North End Pomodoro, Inc. ("North End Pomodoro") is a corporation duly organized under Massachusetts law with a principal place of business located at 319 Hanover Street, Boston, Massachusetts.

14. Defendant Matt Murphy's Pub, Inc. ("Matt Murphy's") is a corporation duly organized under Massachusetts law with a principal place of business located at 14 Harvard Street, Brookline, Massachusetts.

15. At all relevant times, Defendant Siobhan Carew ("Carew") was the director, president, treasurer and secretary of North End Pomodoro and Golden Apple. At all relevant times, Carew was the chief financial officer, director, president, treasurer and secretary of Matt Murphy's. On information and belief, Ms. Carew resides at 31 White Place, Brookline, Massachusetts.

16. On information and belief, at all relevant times, Defendant Jonathan Pell ("Pell") was general manager of Golden Apple, North End Pomodoro and Matt Murphy's. On information and belief, Mr. Pell resides at 50 Black Cat Road, Plymouth, Massachusetts.

17. Defendants executed a tolling agreement, attached hereto as Exhibit "B," under which this action is deemed filed on February 12, 2012.

### Factual Allegations

18. Hernandez worked as an employee for Brookline Pomodoro from approximately 2006 until on or about April 9, 2012.

19. During the relevant period, Hernandez worked a regular weekly schedule of 10 a.m. to 11 p.m. or midnight on Mondays; 3 p.m. to 11:30 p.m. on Tuesdays; 10 a.m. to 11:30 p.m. on Wednesdays; 10 a.m. to midnight on Fridays; and 3 p.m. to midnight on Sundays. Hernandez worked a total of 58 hours or more per week.

20. Although Thursdays and Saturdays were supposed to be Hernandez's days off, he was often required to work those days — sometimes without additional compensation.

21. When Hernandez complained to Carew about not being paid for these extra days, she replied, "If you want to keep your job, this is what you got to do."

22. During the relevant period, Hernandez was paid a fixed weekly salary of $750 for all hours worked.

23. Lazo began working as an employee for North End Pomodoro in or about mid-2011. He ceased working for Defendants on or about April 4, 2012.

24. During the relevant period, Lazo worked a regular weekly schedule of 1:30 p.m. to 11:30 p.m., Tuesday through Friday; and 8 a.m. to midnight, Saturday and Sunday. Lazo worked a total of approximately 72 hours or more per week.

25. During the relevant period, Defendants paid Lazo a fixed weekly salary of $850.

26. On or about April 4, 2012, Defendants terminated Lazo's employment for refusing to sign a document falsely stating that he only worked forty (40) hours per week.

27. On information and belief, Defendants sought to have Lazo sign the false document in an attempt to interfere with an investigation by the Department of Labor ("DOL") into Defendants' pay practices, including their failure to pay overtime compensation.

28. J. Ortez began working as an employee for North End Pomodoro in approximately 1992. In or about 2007, J. Ortez began working at Brookline Pomodoro as well. In or about August 2011, J. Ortez ceased working for Defendants.

29. During the relevant period, J. Ortez worked a regular weekly schedule of 9 a.m. to midnight on Mondays, Tuesday, Thursdays and Fridays; and 2 or 3 p.m. to midnight on

Wednesdays and Saturdays. J. Ortez worked a total of approximately 78 hours or more per week.

30. During the relevant period, J. Ortez was paid a fixed weekly salary of $740 per week for all hours worked.

31. In or about August 2011, Defendants informed J. Ortez that they intended to cut his wages by $140 per week.

32. At that reduced rate, Defendants would no longer be paying J. Ortez the minimum and/or overtime wages required by law, including by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

33. J. Ortez attempted to discuss the wage cut with Carew, but Carew refused to discuss it. Carew told him, "You don't have a choice. You have to do whatever I say. Do your job. . . . Don't ask questions."

34. The following day, when J. Ortez went to work, Pell and another employee informed J. Ortez that Defendants had terminated his employment because he (J. Ortez) had attempted to discuss his reduced compensation with Carew the day before.

35. In or about September 2011, J. Ortez made a wage and overtime complaint with DOL, regarding Defendants' wage practices.

36. Thereinafter, DOL initiated an investigation into Defendants' wage practices, including overtime compensation.

37. DOL interviewed Defendants' employees.

38. DOL discovered that Defendants did not keep the time records required by law.

39. Specifically, Defendants did not keep contemporaneous or accurate records of the times that its employees actually worked.

40. DOL thereinafter required Defendants to install punchclocks or a similar mechanism to records its employees' hours.

41. DOL discovered that employees usually did not receive the breaks required by law.

42. After receiving notice of the DOL's investigation, Defendants attempted to require employees to sign a document stating that they did not work more than forty (40) hours, which was not true.

43. Y. Ortez worked for Pomodoro North End from approximately January 2008 until approximately April 4, 2012.

44. During the relevant period, Y. Ortez worked a regularly weekly schedule of Sundays, 10 a.m. to midnight; 1 or 2 p.m. to midnight, Tuesday through Friday; and 10 a.m. to midnight or 1 a.m., Saturdays. Y. Ortez worked a total of approximately 66 to 71 hours or more per week.

45. During the relevant period, Y. Ortez received a regular weekly salary of $740.

46. In or about April 2011, Defendants attempted to force Y. Ortez to sign the statement falsely stating that he worked no more than forty (40) hours, but Y. Ortez refused.

47. As a result, Defendants terminated Y. Ortez's employment on the spot.

48. Carew yelled at Y. Ortez, "Because of your father, I'm in real trouble. Get out of here. I don't want you here anymore."

49. Carew added, "You have your father's same blood; you're stupid."

50. Soto worked for Pomodoro North End from approximately in approximately 2000 until on or about September 23, 2011.

51. During the relevant period, Soto worked a regular weekly schedule of 2 p.m. until 11:30 or 11:40 p.m., Tuesday through Friday; and 10 a.m. until 11 p.m. or midnight, Saturday and Sunday. Soto worked approximately 64 to 66 hours per week.

52. During the relevant period, Soto was paid a fixed weekly salary of $850 per week for all hours worked.

53. Velasquez worked for Pomodoro Brookline from approximately 2011 until approximately on or about April 9, 2012.

54. During the relevant period, Velasquez worked a regular weekly schedule of 3 p.m. to 11 p.m., Monday, Wednesday, Friday and Saturday, with some variation; and 10 a.m. to 11 p.m., Tuesday and Thursday. Velasquez also worked approximately 1.0 to 1.5 unscheduled hours per week. Velasquez worked approximately 62 hours per week during the relevant period.

55. During the relevant period, Velasquez was paid a fixed weekly salary of $790 per week for all hours worked.

56. Periodically, such as when Defendants anticipated food-safety inspectors, Defendants required Plaintiffs to work extra hours cleaning or doing other work without additional compensation.

57. Defendants told Plaintiffs that if they did not perform this unpaid work, they would lose their jobs.

58. Although each Plaintiff worked primarily for one of the restaurants named as a Defendant in this Complaint, the at least some of the Plaintiffs periodically were required to work at the one or both of the other two restaurants as needed and often without additional compensation.

59. This unpaid work often occurred during Plaintiffs' scheduled days off or during the night after the restaurants were closed.

60. Plaintiffs often worked even more hours during busier times, such as during the summer near Christmas, and mid-to-late February.

61. Plaintiffs did not receive one-and-a-half times their regular rate of pay when they worked more than 40 hours in a week.

62. Plaintiffs generally did not receive breaks during the workday.

63. On information and belief, Defendants' failure to pay overtime pay was knowing, intentional, and willful.

64. Indeed, Carew made repeated comments to the effect that Plaintiffs — who are all immigrants — were not in a position to assert their rights.

65. When Hernandez complained about being required to work on his day off without extra pay, Carew remarked, "If you want to keep your job, this is what you got to do."

66. On another occasion, Carew remarked, "If you don't want to work for me, go back to your f***ing country where you make $5 a day."

67. On another occasion, Carew remarked, "Where you lived, you didn't make any money. In here, you are making a lot."

68. On another occasion, Carew remarked, "In the country you come from, you don't eat there. There's nothing to eat."

69. On another occasion, Carew remarked, "If I can work seven days, why can't you work the same as me . . . ?"

70. On another occasion, Carew remarked, "I'm the owner. I work. Why can't you do the same?"

71. On another occasion, Carew remarked, "If you're sick, that's not my f***ing problem. If you're sick, go home, you don't have a job. You don't have a choice. . . . go home, you don't come back tomorrow."

72. During the majority of the time that they were employed for Defendants, Plaintiffs did not see any type of notice posted in the workplace with information about the minimum wage and overtime laws.

73. At no time during his employment with Defendants did Plaintiffs understand that they had a right to receive overtime payments under federal law.

74. To the contrary, Carew told employees that she did not have to pay them overtime compensation. She added, "This is your job; here, you eat and you make money."

75. When employees asked for overtime compensation, Carew responded, "I pay you good money; you don't have to complain."

76. Carew knew, however, that she was legally required to pay Plaintiffs and their co-workers overtime compensation.

77. Indeed, Golden Apple had previously been sued for failure to pay overtime compensation to an employee under circumstances similar to the Plaintiffs'.

78. On or about May 16, 2009, former Brookline Pomodoro employee Angel Santos ("Santos") sued Golden Apple and James Scoon ("Scoon") in the U.S. District Court for the District of Massachusetts to recover unpaid overtime compensation.

79. On information and belief, Scoon was then an officer and director of Golden Apple.

80. Santos's claim was designated as Civil Action No. 1:09-cv-11215-JLT.

81. Santos complaint alleged that he worked in the kitchen performing duties including dishwashing, cleaning and food preparation.

82. Plaintiffs performed similar duties as Defendants' employees.

83. Santos's complaint alleged that the worked 63 hours per week, received a flat rate of $700 per week and did not receive overtime compensation.

84. Plaintiffs' also worked fairly regular schedules of more than 40 hours per week and also received flat rates without overtime compensation.

85. Santos's complaint alleged that Santos worked several extra days beyond his regular schedule without additional pay.

86. Plaintiffs also were required to work extra days beyond their regular schedules, sometimes without additional pay.

87. Santos's complaint further alleged that he "worked approximately 3,076 overtime hours for which he was not properly compensated, and he is owed approximately $16,968.92 in overtime pay for those hours."

88. On information and belief, Golden Apple settled Santos's claim.

89. Santos, Golden Apple and Scoon stipulated to the dismissal of Santos's claim on or about March 10, 2010.

90. The initiation of Santos's lawsuit did not deter Defendants from their illegal pay practices.

91. Rather, Defendants continued its illegal pay scheme by failing to pay Plaintiffs one-and-half times their hourly rate for each hour worked over 40 hours per week.


## COUNT ONE – FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF THE FAIR LABOR STARDARDS ACT, 29 U.S.C. § 207(a)

92. Plaintiffs hereby repeat and incorporate the allegations made in Paragraphs 1-91, above.

93. Defendants violated 29 U.S.C. § 207(a) by failing to pay Plaintiffs overtime compensation at one-and-a-half times their regular hourly rate for hours worked in excess of 40 hours per week.

94. Defendants' violations of 29 U.S.C. §207(a) were repeated, willful and intentional.

95. Plaintiffs have been damaged by these violations of 29 U.S.C. § 207(a).

WHEREFORE the Plaintiffs request that the Court find that Defendants liable for the full amount of their unpaid overtime compensation, award an additional equal amount as liquidated damages, award costs and reasonable attorneys' fees and order any other or further relief as the Court may deem just and proper.

## COUNT TWO – RETALIATION IN VIOLATION OF THE FAIR LABOR STARDARDS ACT, 29 U.S.C. § 215(a)(3)

96. Plaintiffs hereby repeat and incorporate the allegations made in Paragraphs 1-95, above.

97. Defendants violated 29 U.S.C. §§ 215(c) by terminating J. Ortez for making internal complaints about Defendants' illegal wage practices.

98. Defendants violated 29 U.S.C. § 215(c) by terminating Lazo for refusing to sign a document falsely stating that he worked no more than forty (40) hours per week and/or for participating in the DOL's investigation into Defendants' wage practices.

WHEREFORE J. Ortez and Lazo request that the Court award them back pay, front pay, punitive damages, emotional-distress damages, reasonable attorneys' fees, and costs, and order any other or further relief as the Court may deem just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

EDWIN HERNANDEZ, ARLES GRANADOS
LAZO, JOSE ORTEZ, YERLIN ORTEZ,
MARTIR SOTO AND SANTOS VELASQUEZ
By Their Attorney,


/s/ Michaela C. May
Michaela C. May, Esq. (BBO #676834)
P.O. Box 441944.
Somerville, MA 02144-1944
P: (617) 863-6529
F: (617) 977-8774
E: attorneymay@gmail.com


Dated: February _____, 2013