UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWIN HERNANDEZ, ARLES GRANADOS LAZO, JOSE ORTEZ, YERLIN ORTEZ, MARTIR SORTO, AND SANTOS VELASQUEZ, <br><br> Plaintiffs, <br><br> v. <br><br> GOLDEN APPLE, INC., POMODORO NORTH END, INC., MATT MURPHY'S PUB, INC., SIOBHAN CAREW, AND JONATHAN PELL, <br><br> Defendants. | Civil Action No. 1:13-cv-10394-WGY |

**PLAINTIFFS' MOTION TO STAY CONSIDERATION OF DEFENDANT JONTHAN PELL'S SUMMARY JUDGMENT MOTION PURSUANT TO FED. R. CIV. P. 56(D) AND, IN THE ALTERNATIVE, OPPOSITION TO THE SUMMARY JUDGMENT MOTION**

Pursuant to Fed. R. Civ. P. 56(d), the Plaintiffs move to stay consideration of Defendant Jonathan Pell's pre-discovery summary judgment motion until the conclusion of discovery in this case. While, as detailed herein, there are disputed issues of material fact that would preclude summary judgment on its merits, consideration of Defendant Jonathan Pell's ("Pell") premature summary judgment motion at this time would be a waste of this Court's and the Plaintiffs' resources. Pell has advocated for the maximum discovery period allowed under the Rules, while at the same time moving for summary judgment before discovery based on facts to which he contends Plaintiffs did not have access. This Court should recognize this strategy as duplicitous, and should not allow Pell two bites at the apple by permitting him to renew this motion in an expanded form at the conclusion of discovery. Rather, as Pell claims that Defendants alone have

1

access to the relevant evidence in this case, Pell should be held to the summary judgment motion and supporting statement of material facts that he has filed. At the conclusion of the discovery period, Plaintiffs should be permitted to supplement their opposition with evidence acquired during discovery. This course of action would ensure that Plaintiffs have a fair and reasonable opportunity to attain the discovery to which they are entitled under the Rules and would preclude this Court from having to consider, and Plaintiffs from having to oppose, two summary judgment motions by the same party on the same issue.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants Golden Apple, Inc., d/b/a Brookline Pomodoro ("Brookline Pomodoro"), North End Pomodoro, Inc. ("North End Pomodoro") and Matt Murphy's Pub, Inc. ("Matt Murphy's Pub") (collectively "the Restaurants") are cash-only businesses, operated by Defendants Jonathan Pell ("Pell") and Siobhan Carew ("Carew"). *See* Plaintiffs' Disputed Material Facts As to Which There Exists a Genuine Issue to Be Tried ("SOF") at ¶¶ 21, 33. The Restaurants, Pell, and Carew (collectively "Defendants'), paid the wages of their employees, including the Plaintiffs, by a combination of cash and check. *Id.* at ¶¶ 35, 36. Those wages were for hours well in excess of forty (40) per week but did not include overtime compensation. *Id.* at ¶ 22. Defendants did record not the hours that employees actually worked. *Id.* at ¶ 23.

Pell has been general manager of all three Restaurants since in or about 2008 or 2009. SOF at ¶ 21. At that time, Pell was already experienced at managing restaurants; he had recently owned one himself. *Id.* at ¶ 20. Almost immediately, Pell declared the kitchen employees were paid too much money. *Id.* at ¶ 31. He remarked to Plaintiff José Ortez ("J. Ortez"), "These Spanish people, they are making too much money. They can work for less money . . . I know I can do this [pay employees less] because I used to own restaurants," or words to that effect. *Id.*

2

Within a week, J. Ortez's weekly wages went down by $100 to $150. *Id*. Pell exercised his powers over the kitchen employees' wages and schedules in other ways, including requiring employees to work additional shifts, sometimes without additional compensation. SOF at ¶¶ 30, 32. He told employees that if they did not, they would no longer have a job. *Id.* at ¶ 32.

Indeed, Pell enjoyed the broad powers expected of a person who is "general manager" of a three-restaurant group. *See* SOF at ¶¶ 24-36. He handled significant sums of cash generated by the restaurants and signed employees' paychecks. *Id.* at ¶ 34-36. Pell gave some of that cash to employees as wages. *Id.* at ¶ 35. He also had significant authority over the terms of the Plaintiffs' employment, including hiring. *Id.* at ¶¶ 24, 25. Pell hired Plaintiff Santos Velasquez ("Velasquez"), essentially on the spot and without consulting Carew. *Id.* at ¶ 25. Pell also was responsible for handling employee-performance issue. *Id.* at ¶ 29.

Pell's broad authority also extended to terminating employees. For example, he terminated employee Angel Santos ("Santos"), apparently because of perceived performance issues. *Id.* at ¶ 27. Days later, Santos returned to the restaurant and tried to speak with Carew and to beg for his job back. *Id.* at ¶ 28. Carew deferred to Pell's authority, telling Santos, "You have nothing to talk to me about. Talk to the general manager, which is Jon Pell," or words to that effect. *Id*.

In or about April 2012, Pell attempted to deflect the Department of Labor's inquiry into the Restaurants' overtime violations. *Id.* at ¶ 37. Specifically, he tried to coerce Plaintiffs Yerlin Ortez ("Y. Ortez") and Arles Granados Lazo ("Lazo") and a third employee into signing a document falsely stating that the three employees worked no more than 40 hours per week. *Id*. Pell threatened to fire them if he did not sign the document and offered to pay them money if they did. *Id.* In doing so, Pell remarked that the Department of Labor was "screwing us." *Id.*

Defendants terminated J. Ortez's and Lazo's employment in or about August or September 2011 and April 4, 2012, respectfully. *See* Second Amended Complaint ("Compl."), at ¶¶ 31, 37; Amended Answer ("Ans.") at ¶¶ 31, 37 (stating the dates on which Lazo's and Y. Ortez's employment ended).

On February 26, 2013, Plaintiffs filed their Complaint alleging that Defendants denied them overtime compensation and retaliated against J. Ortez and Lazo in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 207(a) and 215(a)(3). Plaintiffs shortly thereafter amended their complaint to correct a technical defect and assented to an extension for Defendant's response to their Complaint to June 3, 2013. On that date, Pell moved under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint against him. At the same time, the remaining Defendants moved to enlarge their time to file an Answer until after the Court's decision on Pell's Motion to Dismiss. On June 20, 2013, this Court denied the motion to enlarge. Plaintiffs opposed Pell's Motion to Dismiss, and moved to amend their Complaint, which the Court permitted. Pell's Motion to Dismiss was rendered moot. On July 3, 2013, all Defendants, including Pell, filed their joint Answer.

In anticipation of this Court's scheduling conference, the parties' counsel conferred as required under Local Rule 16.1, including to create a proposed pretrial schedule that includes a plan for discovery. Affidavit of Counsel in Support of Plaintiffs' Rule 56(d) Motion ("May Aff."), at ¶ 8. *See* L.R. 16.1(b)(2). During those conversations, Defendants' counsel stated that Defendants wanted the maximum discovery that counsel believed this Court would allow; Plaintiffs' counsel initially recommended six months' fact discovery. May Aff. at ¶ 8. The parties compromised, and on September 4, 2013, they submitted a proposed scheduling order.

4

*See id*. Thereafter, the parties amended the statement to comply with this Court's order that the parties seek less time.

On September 10, 2013, even before the scheduling conference was held, Pell filed this Motion for Summary Judgment. On September 11, 2013, the conference was held. Pursuant to this Court's order, initial disclosures are due on October 18, 2013. Accordingly, no written discovery has been issued or received, and no depositions have been taken. May Aff. at ¶¶ 5-7.

**LEGAL ARGUMENT**

**I. This Court should grant Plaintiffs' Rule 56(d) motion to afford them a fair opportunity to discover evidence in Defendants' control, including evidence of Pell's role in the Defendants' illegal wage schemes and in terminating Plaintiffs J. Ortez and Lazo.**

"[S]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). In such cases, Rule 56(d) provides a "safety net . . . against precipitous grants of summary judgment." *Nieves-Romero v. United States,* 715 F.3d 375, 381 (1st Cir. 2013). When the Rule[1] is invoked, the Court must carefully "ascertain[] whether plaintiffs have received a full and fair chance to discover relevant information in the hands of defendants." *Carmona v. Toledo*, 215 F.3d 124, 133-34 (1st Cir. 2000). In considering a Rule 56(d) motion, "an inquiring court should err, if at all, on the side of liberality." *Nieves-Romero,* 715 F.3d at 381.

Here, discovery has not even begun. May Aff. at ¶¶ 4-7. Pell filed his summary judgment motion the day before this Court's September 11, 2013, scheduling conference. *Id.* at ¶ 4.

---

[1] Textual differences between current Rule 56(d) and former Rule 56(f) are "purely stylistic," and case law developed under the latter remains controlling. *Nieves-Romero*, 715 F.3d at 381 n.3. Accordingly, this Motion cites cases to the current and former rules interchangeably. *See id.*

5

Automatic disclosures are not due until October 18, 2013, and as a result the parties remain subject to a discovery moratorium. *See id.* at ¶ 5. Plaintiffs have had no opportunity whatsoever to conduct discovery, and thus Pell's summary judgment motion is based on an entirely undeveloped record. *See id.* at ¶¶ 4-7.

Discovery is particularly crucial here, where "plaintiffs' case turns so largely on their ability to secure evidence within the possession of defendants . . . ." *Carmona v. Toledo*, 215 F.3d 124, 133 (1st Cir. 2000). Pell's liability turns on whether he "exercise[d] control over the nature and structure of the employment relationship, or economic control over the relationship" during the period for which Plaintiffs seek overtime compensation. *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009). "The trier of fact must consider factors such as the Individual Defendants' job descriptions, their financial interests in ACI and its parent company, and the managerial control that each Individual Defendant wielded with respect to plaintiffs' hours." *Smith v. ABC Training Ctr. of Md., Inc.*, No. JFM–13–306, 2013 WL 3984630, * 4 (D.Md. Aug. 1, 2013).

Here, by Pell's own account to this Court, "[t]he scope of [his] responsibilities are not shared with kitchen workers at any of the Restaurants." Declaration of Jonathan Pell ("Pell Dec.") at ¶ 17.[2] *Accord* Declaration of Siobhan Carew ("Carew Dec.") at ¶ 15 ("The Scope of Pell's responsibilities were not shared with kitchen workers at any of the Restaurants."). In such a case, the Court "should not render summary judgment because of gaps in a plaintiff's proof without first determining that plaintiff has had a fair chance to obtain necessary and available evidence from the other party." *Carmona*, 215 F.3d at 133; *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246-47 (4th Cir. 2002) ("Generally speaking, '[s]ufficient time

---

[2] Pell's and Carew's declarations are attached to Pell's statement of material facts, as Exhibits A and B, respectively.

for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party.") (citation omitted). Clearly, entry of summary judgment before the non-moving party can conduct discovery into matters within the moving party's control would deprive the former of a fair chance to gain the evidence it needs. *See id.*

During the course of the discovery period ordered by this Court, Plaintiffs expect to elicit written discovery and to depose witnesses regarding:

a. Pell's role in hiring and firing employees, generally;

b. Pell's role in the decisions to terminate Plaintiffs José Ortez and Arles Granados Lazo specifically;

c. Pell's representations to Defendants' employees and third parties about his own powers within the Defendant restaurants Golden Apple, Inc., d/b/a Brookline Pomodoro ("Brookline Pomodoro"), North End Pomodoro, Inc. ("North End Pomodoro") and Matt Murphy's Pub, Inc. ("Matt Murphy's Pub") (collectively "the Restaurants");

d. Pell's degree of control over the finances of each of the Restaurants, including control over and allocation of the Restaurants' substantial cash income;

e. Pell's degree of control over the compensation and benefits of employees at each of the Restaurants;

f. Pell's degree of control over the schedules of the kitchen employees of each of the three Restaurants, including in requiring them to work additional, unscheduled shifts without compensation and in failing to record contemporaneously their hours;

g. Pell's role in coercing or attempting to coerce the Restaurants' employees into signing false statements that they did not work more than forty (40) hours per week and threatening their jobs if they refused to sign, and

h. Pell's financial incentives to participate in the Restaurants' illegal wage scheme, including any ownership interests and/or performance-based compensation he either received or anticipated receiving.

May Aff. at ¶ 11. Plaintiffs believe in good faith that Pell is liable, based on (1) Pell's own representations to employees and a third party about his job title and responsibilities; (2) Carew's representations to employees of the same; (3) the Plaintiff's observations of Pell's exercise of

7

those duties, and (4) communications with the Department of Labor about the same. *See id.* at ¶ 12. *See also* Exhibit "E," "Boston Office Cleaning Testimonial."[3]

That the degree of control exerted by individual defendants in an FLSA case is a "fact-intensive inquiry," *Smith*, 2013 WL 3984630, at *9, renders pre-discovery summary judgment all the more inappropriate. "[I]t is neither necessary or desirable for a court to attempt to probe sophisticated issues on an undeveloped record." *Resolution Trust Corp. v. No. Bridge Assoc., Inc.*, 22 F.3d 1198, 1208 (1st Cir. 1994).

Absurdly, Pell would have this court blindly trust his version of the "facts." That is simply inappropriate. Plaintiffs must have an opportunity to test the veracity of the very broad, often conclusory denials supporting Pell's motion. *See United States v. Carty*, 993 F.2d 1005 (1st Cir. 1993) ("Cross-examination is the 'principal means by which the believability of a witness and the truth of his testimony are tested.'") (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)); *Harrods Ltd.*, 302 F.3d at 247 (summary judgment was inappropriate when it was granted "soon after the complaint was filed . . . and prior to almost any discovery, and [plaintiff] was not dilatory in pursuing discovery"); *Smith*, 2013 WL 3984630, at *9 (summary judgment is premature in FLSA claim against an individual where "conflicting versions of the scope of the Individual Defendants' control creates a genuine issue of material fact that cannot be resolved without discovery."). *See also* Part II.A, *supra* (discussing the conclusory nature of portions of Pell's and Carew's allegations).

If Pell could move successfully to dismiss Plaintiffs' thorough complaint, he would have. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to survive a motion to dismiss, a complaint must contain "factual content that allows the court to draw the reasonable inference that the

---

[3] This exhibit is attached to Plaintiffs' Disputed Material Facts As to Which There Exhibits A Genuine Issue to Be Tried, filed concurrently herewith.

defendant is liable for the misconduct alleged"). *See* Compl. at ¶¶ 29, 35, 36, 43, 44, 66-68, 75-77, 93 (describing facts underlying Pell's liability for failure to pay overtime and retaliatory termination). Instead, he has re-packaged his earlier motion to dismiss as a summary judgment motion served even before discovery could begin and supported only by his and Carew's conclusory affidavits. The repackaged motion is nothing more than an attempt to deny the Plaintiffs access to evidence to which they are entitled under the detailed allegations in their complaint. *See id.* Moving for pre-discovery summary judgment, particularly based on information primarily in the moving party's control, is an unjustifiable waste of the Court's and the non-moving parties' resources.

Just last month, Pell through counsel advocated for the maximum discovery allowable under the Rules. This Court should hold Pell to that timeframe while ensuring that Pell cannot renew his motion in an expanded form at substantial cost to the Plaintiffs and this Court. Pell claims both to possess all evidence necessary for this Court to award him summary judgment and that all material evidence is in Defendants' sole control. Accordingly, this Court should (1) require Pell to rely solely on the evidence proffered in his pre-discovery summary judgment motion and (2) stay consideration of the motion until the close of discovery in order to permit Plaintiffs to attain the discovery they need to mount a fair opposition. Anything less gives Pell two bites at the summary judgment apple that his manipulation of this Court's rules does not merit.

**II. In the alternative, this Court should deny summary judgment on its merits, as a jury could find that Pell was an "employer" under the FLSA's broad definition of that term and that he participated in the decision to terminate Plaintiffs J. Ortez and Lazo.**

Summary judgment is to be granted only where no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he court must

9

draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151. It is the function of the jury alone to make credibility determinations, weigh evidence, and draw legitimate inferences therefrom. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Summary judgment may not rest on conclusory allegations or on statements of which the affiant has no personal knowledge. *Murphy v. Ford Motor Co.*, 170 F.R.D. 82, 85 (D.Mass. 1997). This "requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 316 (1st Cir. 2001). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### A. A reasonable jury could find that Pell exercised considerable control over the Restaurants' cash-only finances, wielded power over employees' hours and compensation, and hired and fired employees.

Traditional notions about "piercing the corporate veil" to achieve individual liability do not apply under the FLSA. *See Donovan v. Agnew*, 712 F.2d 1509, 1512-14 (1st Cir. 1983). Rather, "*any person* acting directly or indirectly in the interest of an employer in relation to an employee" may be liable for failure to pay overtime compensation or other wages under the FLSA. 29 U.S.C. § 203(d) (emphasis added). *See Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012) ("those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies"). Although this terminology may be somewhat confusing, such an individual is labeled an "employer" under the statute. 29 U.S.C. §

203(d). The FLSA contemplates several simultaneous "employers," *each* charged with compliance. *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998). This expansive definition of an "employer," beyond the ordinary boundaries of traditional torts, comports with the FLSA's remedial purpose. *Id.*

As addressed below, even at this early stage of litigation, the Plaintiffs have proffered significant evidence that Pell was not the lowly business manager that he and Carew claim. In contrast, Pell relies entirely on his and Carew's declarations — significant portions of which lack the personal knowledge or peculiarized facts required in the summary judgment context. *See* Fed. R. Civ. P. 56(c)(4). As if Pell and Carew were puppet and puppetmaster, Carew makes a litany of assertions about various functions that she says Pell never performed. *See* Carew Dec. at ¶ 6 ("Pell has never had control over the Restaurants' day to day operations."), ¶ 7 ("Pell never directed the restaurants employment practices . . . ."), ¶ 8 ("Pell . . . has never been responsible for employees' method of compensation."), ¶ 9 ("Pell has never set employees' wages."), ¶ 10 ("Pell has never set employees [sic] schedules or required employees to perform work or attend work-related meetings without pay."), ¶ 11 ("Pell has never been responsible for time-reporting policies, directed employees as to how to record their time, or directed employees as to how to report their time to thee restaurants."). Carew, however, fails to show that these assertions are based on her personal knowledge. There are three Restaurant defendants in this case, and Carew could not have been privy to every act that Pell did or did not do. Accordingly, this Court should disregard these portions of Carew's declaration. *Perez*, 247 F.3d at 316.

Vague and conclusory portions of Pell's and Carew's declarations are also troubling. The litany of job functions (some of which are quite vague) that they claim Pell did not perform fail to state who did perform them; these allegations are blanket denials with nothing more. *See*

Carew Dec. at ¶¶ 6-11; Pell Dec. at ¶¶ 6-14. The same assertions rely on amorphous and conclusory umbrella terms, omitting the precise policies, procedures and responsibilities that the declarants are purporting to describe so authoritatively. *See, e.g.,* Carew Dec. at ¶ 6 ("day-to-day operations"), ¶ 7 ("employment practices"); ¶ 11 ("time reporting policies"); Pell Dec. at ¶ 8 ("day-to-day operations"); ¶ 9 ("employment practices"); ¶ 10 ("compensation policies"), ¶ 13 ("time-reporting policies"). Pell and Carew fail to say what "day-to-day operations" and "employment practices" consist of and what the Restaurants' "time-reporting" policies" are. *See id.* Thus, large portions of Carew's and Pell's declarations merely beg the question, or several questions, and as such are insufficiently specific to assist Pell in gaining summary judgment. *Perez*, 247 F.3d at 316 (declining to consider sections of an affidavit that are "insufficiently supported with particularized factual information" and "conclusory rather than factual."). This Court should disregard them as such. *Id.*

Plaintiffs, in contrast, have offered evidence of specific actions that Pell took and of Pell's and Carew's own representations about Pell's broad powers as an experienced "general manager" that, viewed together and in the light most favorable to Plaintiffs, are sufficient for a jury to find that Pell is "not just any employee with some supervisory control over other employees." *See Chao*, 493 F.3d at 35; SOF at ¶¶ 21, 24-36, Pell was already an experienced general manager who had owned a restaurant himself and whose broad powers he and Carew proclaimed. SOF at ¶¶ 20, 28. Pell managed and controlled the Restaurants' finances, including payroll from the start of his tenure there. *Id.* at ¶¶ 30-36. Shortly after he started working for the Restaurants, Pell remarked to J. Ortez that the employees made too much money and that he would end that practice. *Id.* at ¶ 31. Within a week, J. Ortez's weekly wage was cut by $100 to

$150. *Id*. Plainly, a jury could infer from this sequence of events that Pell himself reduced J. Ortez's wages.

That Pell handled large amounts of cash from the Restaurants' cash-only operations, that he gave some of that cash to employees as wages, and that he signed paychecks further support a finding that he wielded substantial control over the Restaurant's finances generally and pay scheme specifically. *See* SOF at ¶¶ 34-36. *See Baystate*, 163 F.3d at 678 (agency findings were inadequate to support personal liability where it was unclear whether individuals "controlled [corporation's] purse-strings or made corporate policy about [its] compensation practices"). There is also evidence that Pell made decisions about employees' work schedules. SOF at ¶ 32. He required them to work additional, unscheduled hours without compensation and threatened them with job loss if they did not. *Id*.

Pell had the power to hire and fire employees. SOF at ¶¶ 24-28. Pell exercised that power when he terminated Santos's employment. *Id.* at ¶ 27. When Santos returned days later to plead with Carew for his job, Carew was steadfast. *Id.* at ¶ 28. Pell, as "general manager" was the person to talk to. *Id*. Pell may try to spin this statement for his purpose, but a jury could reasonably conclude not simply that Pell fired in Santos but that he did not need Carew's approval to do so. That Pell and Carew represent Pell's duties differently, at most, creates a triable issue of fact for a jury to decide.

Viewing the evidence in the light most favorable to Plaintiffs, the "economic reality" here is that Pell controlled the finances through which Plaintiffs were denied the overtime compensation the that FLSA requires; that Pell assigned the Plaintiffs to work hours beyond the 40-hour threshold established by the FLSA; that Pell had the power to hire and fire employees; and that he actually wielded that power. *See Baystate*, 163 F.3d at 677-78. Accordingly, a jury

could reasonably find that Pell is an "employer" under Section 203(d), and summary judgment should be denied.

**B. In light of evidence that Pell lied about his job duties and pressured employees to misrepresent the number of hours that they worked, a reasonable jury could find that Pell is lying about his role in terminating J. Ortez and Lazo and that he made or participated in the decision to terminate their employment.**

The FLSA's anti-retaliation provision creates personal liability even where the statute's provisions regarding the payment of wages do not. Section 215(a)(3) makes it "unlawful for *any person* . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . ." 29 U.S.C. § 215(a)(3) (emphasis added). Accordingly, one need not be an "employer" under Section 203(d) to be liable for retaliation; Pell can be liable for terminating J. Ortez and Lazo even if the facts ultimately do support individual liability for the Defendants' failure to pay overtime compensation.

Of course, Pell and Carew both claim that Pell was not involved in the decision to terminate J. Ortez's and Lazo's employment. *See* Pell Dec. at ¶ 15; Carew Dec. at ¶ 13. Carew, however, declines to state the basis for her personal knowledge on that issue; such a conclusory statement cannot support summary judgment, and this Court should disregard it. *Perez*, 247 F.3d at 316; *Murphy*, 170 F.R.D. at 85. *See* Carew Dec. at ¶ 13. Indeed, both Pell and Carew fail to provide any details whatsoever about the decision to terminate J. Ortez's and Lazo's employment, including who actually made the decision and on what basis. *See* Pell Dec. at ¶ 15; Carew Dec. at ¶ 13**.** Thus, Pell's self-serving claim that he was not involved exists in a vacuum, devoid of any facts about what actually happened.

A jury could reasonably discredit Pell on this account, particularly in light of evidence that Pell did hire and fire employees but lied about it. *Compare* SOF at ¶¶ 26-28 (Pell fired Santos), with Pell Dec. at ¶ 9 ("I have never had the authority . . . fire or discipline employees"). *See Moreau v. Gerardi*, No. 08-40117-FDS, 2010 WL 4961676, *5-6 (D.Mass. Nov. 24, 2010) (in considering a summary judgment motion, the Court may disregard otherwise uncontradicted testimony favoring the moving party when such testimony is undermined by circumstantial evidence sufficient for a jury to establish an affirmative version of the facts). Indeed, Carew herself maintained to an employee whom Pell had fired that Pell had the authority to do so and that the employee should talk to Pell alone. SOF at ¶ 28. When presented with Plaintiffs' evidence, a jury could conclude that Pell lied about his job title, portraying himself as a "business manager" with very limited duties to avoid liability. That Pell tried to coerce Y. Ortez, Lazo and a third employee into signing a document falsely stating that the latter worked no more than 40 hours per week and threatened to fire them if he did not sign further weighs in favor of a finding both that Pell was deeply involved in the Restaurants' illegal compensation practices and that he was conscious of and sought to cover his misdeeds. *See* SOF at ¶ 37. Ultimately and viewing the evidence in the light most favorable to Plaintiffs J. Ortez and Lazo, a jury could infer that Pell is lying to cover his role in their terminations and that he participated in, or even made unassisted, the decision to terminate them. Accordingly, this Court should deny summary judgment on their retaliation claims as well.

## CONCLUSION

On one hand, Pell claims to have proffered sufficient evidence base on which this Court can rule in his favor in his summary judgment motion. On the other hand, he claims that the relevant evidence — which the Plaintiffs have had no to opportunity to discover — is in

15

Defendants' exclusive control. Accordingly, Pell's motion is grossly premature, and this Court should defer considering it pursuant to Fed. R. Civ. P. 56(d). Additionally, given the waste of time and resources that this pre-discovery summary judgment has incurred, this Court should ensure that Pell does not get a second bite of the apple. A second, expanded summary judgment motion from the same party on the same issue, when the first clearly should not have been brought, would cause the Court and the Plaintiffs to expend further resources unfairly. Pell chose to file his summary judgment motion at this very-early stage of litigation. He should be held to that decision, and the Plaintiffs should have a fair opportunity to gather the ordinary discovery to which they are entitled under the detailed allegations in their Complaint. When the discovery — which is shorter than Pell sought — is over, Plaintiffs should be permitted to supplement their opposition accordingly.

In the alternative that this Court denies Plaintiffs' Rule 56(d) motion, this Court should deny Pell's summary judgment motion because the Plaintiffs have proffered sufficient evidence for a jury to reasonably conclude that Pell was a general manager with broad powers, including over their compensation, hiring and firing, and that Pell participated in the decision to discharge Plaintiffs J. Ortez and Lazo.

WHEREFORE Plaintiffs move that this Court (1) stay consideration of Defendant Jonathan Pell's summary judgment until completion of the discovery period and (2) order that the Plaintiffs may supplement their opposition accordingly within twenty-one (21) days thereof, or in the alternative of all of the foregoing, deny Defendant Jonathan Pell's summary judgment motion on its merits.

Respectfully Submitted,
EDWIN HERNANDEZ, ARLES GRANADOS
LAZO, JOSE ORTEZ, YERLIN ORTEZ,
MARTIR SORTO AND SANTOS VELASQUEZ
By Their Attorney,

/s/ Michaela C. May
Michaela C. May, Esq. (BBO #676834)
P.O. Box 441944.
Somerville, MA 02144-1944
P: (617) 863-6529
F: (617) 977-8774
E: attorneymay@gmail.com

Dated: October 10, 2013

## LOCAL RULE 7.1(A)(2) CERTIFICATION

    I hereby certify that I conferred with counsel for the Defendant about this Rule 56(d) Motion in a good-faith attempt to narrow the issues but that we were unable to reach an agreement that would forego the filing of this Motion.

/s/ Michaela C. May
Michaela C. May, Esq.

## CERTIFICATE OF SERVICE

I, Michaela C. May, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Michaela C. May
Michaela C. May, Esq.